983 F.2d 1066
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Michael J. HUGHES, Plaintiff-Appellant,
v.
K MART CORPORATION and Aetna Life Insurance Company,
Defendants-Appellees.
 No. 92-1396.
 United States Court of Appeals, Sixth Circuit.
 Jan. 20, 1993.
 
 Before KENNEDY and BATCHELDER, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant, Michael J. Hughes ("appellant"), appeals the district court's award of summary judgment to defendants-appellees, K Mart Corporation ("K Mart") and Aetna Life Insurance Company ("Aetna"), in this action for the recovery of life insurance benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq., and under state statutory and common-law claims. We affirm.
 
 I.
 A.
 
 2
 Plaintiff's decedent, Elizabeth Hughes ("Hughes"), began employment with K Mart in September of 1978. In December of 1978, after completing three months of full-time employment, she became eligible for life insurance benefits under K Mart's benefit plan ("Plan").[1] Life insurance, in the amount of one times her annual salary, was provided on a non-contributory basis, that is, with no contribution required from the employee, through a group insurance policy with Aetna ("Policy"). In December of 1978, Hughes also elected to receive optional, contributory life insurance in the amount of one times her annual salary.
 
 B.
 
 3
 The Policy provided, in pertinent part, as follows:
 
 
 4
 Section 3. Employees to be Insured (Continued)
 
 
 5
 (I) Employee Coverage (Continued)
 
 B. Effective Dates of Insurance:
 
 6
 (1) As to contributory insurance, each employee who makes written request to his Participant Employer for Employee Coverage ... is to be insured for Employee Coverage on the date he becomes eligible for Employee Coverage or on the date he makes such request, whichever is later; provided, however, that
 
 
 7
 * * *
 
 
 8
 * * *
 
 
 9
 (b) any employee who is both disabled (i.e., ill or injured) and away from work on the date Employee Coverage is to become effective shall not be insured until he actually returns to work on a full-time regular basis.
 
 
 10
 In 1984, K Mart issued to employees a booklet entitled "Group Term Life Insurance Plan" ("1984 booklet"). In November of 1988, K Mart mailed to employees, via intraoffice mail, a booklet entitled "Partners for Quality Health Care" ("1988 booklet"). The 1988 booklet informed employees that "[e]ffective April 1, 1989, your new Optional Life Insurance Plan provides you with the opportunity to purchase additional coverage." This booklet also informed employees that "the new Optional Life Insurance Plan doesn't become effective until April 1, 1989...."
 
 
 11
 In a letter accompanying this booklet ("1988 letter"), K Mart stated that "[e]ffective April 1, 1989, you'll be able to purchase an increased amount of Optional Life Insurance. You can purchase an amount equal to one, two or three times your pay." Appellant maintains that to his knowledge, his wife never received a copy of the 1984 booklet, the 1988 booklet, or the 1988 letter. Although K Mart has no written records that show Hughes was mailed copies of these documents, K Mart's summary judgment motion was supported by three affidavits of K Mart employees that indicate the 1988 booklet and 1988 letter were sent to all "centrally-paid" K Mart employees, one of whom was Hughes. The three affiants, who are centrally-paid K Mart employees, all received copies of the 1988 booklet and 1988 letter via intraoffice mail.
 
 
 12
 In February of 1989, K Mart employees received a booklet entitled "Employees' Group Life Insurance Plan" ("1989 booklet") and an accompanying letter ("1989 letter"). Appellant concedes that Hughes received copies of these two documents. The 1989 letter states, in part, that "[a]n employee on Leave of Absence cannot enroll for an increased amount of optional life insurance until they [sic] return to active employment." The 1989 booklet, in a section entitled "When Coverage Begins," states, in part:
 
 WHEN COVERAGE BEGINS
 
 13
 Your basic, Company-paid life insurance and AD & D coverage begin automatically on the first day of the month following completion of three months of continuous active full-time service.
 
 
 14
 If you choose optional life insurance, coverage begins at the same time as your basic life and AD & D coverage, provided you have completed the necessary enrollment form.
 
 
 15
 If you are not actively at work on the date coverage is to begin, coverage begins the date you return to active employment.
 
 
 16
 The 1989 booklet also makes reference to "April 1, 1989." However, it does not expressly state that an employee is ineligible for optional life insurance coverage unless actively employed on April 1, 1989.
 
 
 17
 On March 1, 1989, Hughes completed and signed an enrollment form indicating that she was electing to increase her optional life insurance coverage from one times to three times her annual salary. This enrollment form contained the following provision:
 
 
 18
 I hereby elect to enroll in the optional Contributory Life Insurance Policy provided by the Company and authorize the Company to make the proper reductions to my earnings to pay the cost of this insurance and understand my pre-tax payment election is irrevocable for the next calendar year unless there is a change in my family status.
 
 
 19
 * * *
 
 
 20
 * * *
 
 
 21
 On the enrollment form, Hughes designated appellant as the beneficiary.
 
 C.
 
 22
 On March 17, 1989, Hughes took a medical leave of absence from K Mart. She never returned.[2] As of April 1, 1989, K Mart began deducting amounts from Hughes's paycheck to cover the cost of the additional life insurance. In July of 1989, Hughes received from K Mart a summary of her benefits entitled "Your Personal Benefits Statement." This statement indicated that as of April 1, 1989, Hughes was covered for the additional life insurance for which she had filled out an enrollment form on March 1, 1989. However, the following month, by letter dated August 29, 1989, K Mart notified Hughes for the first time that she was ineligible for this additional life insurance because "an employee on Leave of Absence cannot enroll for an increased amount of optional life insurance until they [sic] return to active employment." K Mart also sent Hughes a refund check for $64.60, which represented the amount of Hughes's payments attributable to the additional life insurance coverage.[3]
 
 
 23
 On September 1, 1989, Hughes died. By check dated October 14, 1989, Aetna paid $72,000 to appellant. This payment was made pursuant to the contributory and non-contributory life insurance coverage that Hughes had had since 1978. Aetna denied appellant's claim for $72,000 in additional life insurance. The stated reason was that Hughes had not been actively employed on April 1, 1989 and, therefore, was not covered for additional life insurance benefits under the Policy.
 
 
 24
 On June 13, 1990, prior to the commencement of this action, appellant's attorney wrote a letter to K Mart. In this letter, appellant's counsel requested a copy of Hughes's enrollment form and a copy of the Policy. The letter also stated, in part:
 
 
 25
 We understand that aside from the explanatory booklet "Employees' Group Life Insurance Plan", there is no group life certificate which is issued to employees. The booklet which we have is dated February, 1989, and bears the code designation "943-06--(8191)-(2/89)-fs." We shall assume this is the correct booklet unless you should advise otherwise.
 
 
 26
 K Mart did not, at that time, send copies of the 1984 booklet or the 1988 booklet to appellant, nor did K Mart inform appellant of the existence of these earlier booklets. Appellant concedes that a copy of the 1988 booklet was furnished to his counsel in October of 1988.
 
 
 27
 This action was filed in Michigan state court on December 20, 1990. Following removal to federal court on the basis of diversity jurisdiction, Aetna filed a motion to dismiss, which was denied. On April 22, 1991, appellant filed a First Amended Complaint, in which he alleged claims under various provisions of ERISA, as well as common-law claims for misrepresentation and promissory estoppel and a claim based on Michigan Compiled Law ("M.C.L.") § 500.4434. On December 16, 1991, K Mart and Aetna moved for summary judgment. On March 2, 1992, the district court granted the motions and entered judgment for K Mart and Aetna on all claims. Appellant timely appealed.
 
 II.
 
 28
 We address four issues on appeal: (1) whether appellant is entitled to "recover benefits due to him under the terms of his plan," § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B); (2) whether appellant is entitled to recover for breach of fiduciary duty, § 404 of ERISA, 29 U.S.C. § 1104, or for failure to furnish a "sufficiently accurate and comprehensive" Summary Plan Description ("SPD"), § 102(a)(1) of ERISA, 29 U.S.C. § 1022(a)(1); (3) whether appellant's state-law claims, based on promissory estoppel, misrepresentation, and M.C.L. § 500.4434, survive ERISA preemption and, if so, whether appellant may recover on these claims; and (4) whether K Mart is liable for a penalty of up to $100 a day under § 502(c)(1) of ERISA, 29 U.S.C. § 1132(c)(1), for failure to furnish information in response to appellant's June 13, 1990, letter. We address these issues in turn.
 
 A.
 
 29
 The proper standard of review of a determination to deny benefits under ERISA turns on whether the ERISA plan reserves to plan trustees the discretion to make benefits determinations. Where the plan does not reserve discretion, we review de novo a denial of benefits. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). The district court conducted a de novo review. On appeal, the parties do not argue, and we do not discern, that the Plan reserves discretion to the trustees. Therefore, we review de novo the determination to deny benefits to Hughes.
 
 
 30
 We also review de novo the grant of summary judgment for K Mart and Aetna. See, e.g., Equal Employment Opportunity Comm'n v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).
 
 
 31
 The question, for purposes of summary judgment, is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). With these principles in mind, we turn to appellant's claims.
 
 B.
 1.
 
 32
 Appellant's first argument regarding his alleged entitlement to additional life insurance benefits is based on a reading of language in the Policy. Section 3(I)B. (1) indicates that "each employee who makes written request ... for Employee Coverage ... is to be insured for Employee Coverage on the date he becomes eligible for Employee Coverage or on the date he makes such request, whichever is later...." Subsection (b) of this section provides that "any employee who is both disabled (i.e., ill or injured) and away from work on the date Employee Coverage is to become effective shall not be insured until he actually returns to work on a full-time regular basis." Section 3(I)A. states that "[e]ach employee in an eligible class shall become eligible for Employee Coverage on the first day of the calendar month coinciding with or next following the date on which the employee completes three months of continuous full-time service."
 
 
 33
 Appellant argues that Hughes completed three months of continuous service on December 1, 1978, and, therefore, became "eligible for Employee Coverage" on this date. According to appellant, she made "such request" for additional life insurance coverage on March 1, 1989. Therefore, maintains appellant, she was "insured for Employee Coverage" on the later of these two dates, that is, on March 1, 1989.
 
 
 34
 We reject this argument. The Plan states that an employee will be covered on the later of the date he becomes "eligible for Employee Coverage" and the date on which he "makes such request." The use of the term "such" indicates that it is the 1989 request for coverage, i.e., March 1, 1989, that must be compared with the date on which Hughes actually became eligible for the 1989 coverage to determine which of these two dates is "later." Appellant's argument that Hughes could have become "eligible" in 1978 for insurance coverage that was not even offered until 1988 or 1989 is nonsensical. Appellant's interpretation, if accepted, would obviate the need for Hughes, or any other applicant, to get approval of an application for additional insurance coverage, since, under Hughes's interpretation, the mere act of making a request for additional coverage automatically would render that coverage effective. We reject this interpretation.
 
 2.
 
 35
 Appellant next argues that there exists a genuine issue of material fact as to whether Hughes received copies of the 1988 booklet and 1988 letter, thus precluding summary judgment. We disagree. K Mart presented unrebutted affidavits of three employees to show that the 1988 booklet was mailed, via intraoffice mail, to all centrally-paid employees, which would have included Hughes. Appellant has produced no evidence to suggest that K Mart's internal mailing procedures are untrustworthy, nor has appellant produced any evidence to rebut these affidavits. Neither the absence of written records to document the 1988 mailing, nor the fact that appellant is unsure whether Hughes actually received a copy, is enough to raise a genuine issue of material fact. Thus, the substance of the 1988 booklet and letter, to the extent these documents are relevant, may be considered in determining whether a genuine issue exists as to Hughes's coverage for additional life insurance. See Cook v. Providence Hosp., 820 F.2d 176, 179 & n. 3 (6th Cir.1987) (where notice had been mailed by agency to plaintiff and another entity, and where plaintiff's notice was not returned as undelivered and other entity received mailed notice, plaintiff's unsupported contention that she did not receive notice held insufficient to preclude summary judgment).
 
 3.
 
 36
 We now turn to appellant's contention that the Policy and other relevant documents were sufficiently ambiguous regarding Hughes's coverage to preclude summary judgment. The district court found that appellant had failed to show that there was a genuine issue of material fact regarding whether Hughes would be covered if she were not actually employed on or after April 1, 1989. We agree. Although these documents are not models of clear drafting, we believe that, as a matter of law, they put Hughes on notice that she had to be actively employed on or after April 1, 1989, in order to receive additional life insurance coverage.
 
 
 37
 Appellant argues that the 1989 booklet "failed to state plainly" that Hughes had to be working on April 1, 1989,[4] in order to have additional coverage. Appellant also argues that the 1988 booklet only informed Hughes that "[e]ffective April 1, 1989 ...," she would have the opportunity to purchase additional life insurance. Furthermore, on March 1, 1989, Hughes signed an enrollment form that stated she had irrevocably committed herself to pay premiums on the additional insurance for one year. Finally, in July of 1989, K Mart sent her a benefits statement that informed her she was covered. Thus, alleges appellant, Hughes reasonably believed that she had contracted for, and was covered by, this additional insurance.
 
 
 38
 Appellees contend, first, that although the Policy did not state that April 1, 1989, was the effective date for the coverage at issue here, the Policy did indicate that April 1 was a significant date for purposes of change in insurance coverage. Appellees also contend that the 1989 letter and 1989 booklet unambiguously notified Hughes that she had to be actively employed on the effective date of coverage to be covered as of that date. Appellees further point to the 1989 letter, which contains the following language: "An employee on Leave of Absence cannot enroll for an increased amount of optional life insurance until they [sic] return to active employment." Appellees also point to the following sentence in the 1989 booklet: "If you are not actively at work on the date coverage is to begin, coverage begins the date you return to active employment." These passages allegedly put Hughes on notice that she had to be at work on the effective date of coverage in order to be covered. Finally, appellees contend that the 1988 booklet informed Hughes that April 1, 1989, was the effective date for the additional insurance.
 
 
 39
 Section 3. (I)B. of the Policy makes clear that as to contributory insurance, an employee who is "both disabled ... and away from work on the date that Employee Coverage is to become effective" (emphasis added) is not insured until he "actually returns to work...." A rider to the Policy, signed by Aetna and dated September 18, 1989, indicates that the optional life insurance coverage at issue had become "Effective 4-1-89." Hughes did not actually return to work on or after April 1, 1989. Therefore, the Policy language supports appellees' position, that Hughes was not covered for the additional insurance benefits at the time of her death.
 
 
 40
 The 1988 booklet and 1988 letter also support appellees' position. The 1988 letter informs employees that "[e]ffective April 1, 1989, you'll be able to purchase an increased amount of Optional Life Insurance." The 1988 booklet twice states that the additional life insurance coverage will not become "effective" until April 1, 1989. Appellant argues that Hughes was given the opportunity to "purchase" insurance on March 1, 1989. However, filling out an enrollment card is not tantamount to having insurance coverage in place. There is no genuine issue that Hughes received a copy of both the booklet and the letter. She was responsible for familiarizing herself with the contents of these documents. We find that the policy and the other documents unambiguously indicate that Hughes was not covered for additional life insurance beginning April 1, 1989, unless she was actually working on or after that date. Therefore, we affirm summary judgment for appellees on appellant's § 502 ERISA claim.
 
 C.
 
 41
 We also reject appellant's contention that appellees failed to furnish a comprehensible and accurate SPD in violation of § 102(a) of ERISA, 29 U.S.C. § 1022(a).[5] Section 101(a) of ERISA requires the administrator of a plan to furnish participants and beneficiaries with copies of the SPD, as described in § 102(a)(1). Section 102(a)(1) identifies the information that must be furnished and states that the SPD "shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." K Mart, and not Aetna, is the Plan administrator. Therefore, only K Mart may be held liable for a violation of § 102(a), if appellant establishes that Hughes was furnished with an SPD that was not sufficiently comprehensible and accurate to "reasonably apprise" her of her rights under the Plan. See Flacche v. Sun Life Assurance Co. of Canada (U.S.), 958 F.2d 730, 736 (6th Cir.1992).[6]
 
 
 42
 Initially, we note that neither of the parties addresses the issue of whether the 1988 booklet or the 1989 booklet constitutes a Summary Plan Description ("an SPD").[7] The 1984 booklet and the 1989 booklet are denominated "Summary Plan Description[s]," although this label is not dispositive. The 1988 booklet also may be an SPD although, if so, it is at least arguable that it has been superseded by the 1989 booklet.
 
 
 43
 We assume, for purposes of determining whether a violation of § 102 of ERISA has occurred, that the 1988 and 1989 booklets both qualify as SPDs. However, we find neither booklet to be incomprehensible or inaccurate and, therefore, neither of these booklets violates § 102(a) of ERISA. To the contrary, Hughes was put on notice by these booklets that she was required to be actively employed on April 1, 1989, to be covered for additional benefits as of that date.
 
 
 44
 This court's decision in Edwards v. State Farm Mutual Automobile Ins. Co. 851 F.2d 134 (6th Cir.1988), upon which appellant relies, is distinguishable. In Edwards, the company plan provided that the plaintiff-appellee, Edwards, would receive certain disability benefits provided that he satisfied the following provision: "The sum of the member's attained age and the length of his credited service must be at least 55 years prior to his date of disablement." Id. at 135. "Date of Disablement" was not defined in the plan summary provided to Edwards. This plan summary stated: "Time while on sick leave counts as service for plan membership and vesting and also counts as credited service used to determine your retirement income." Id.
 
 
 45
 Edwards took sick leave. While on leave, he was assured by a company representative that he had qualified, or would qualify, for plan disability benefits. He also received annual statements that credited him for time while on sick leave. After having accumulated what he believed was sufficient sick leave to enable him to qualify for disability benefits under the plan, Edwards applied for Social Security Disability Benefits. Subsequently the Retirement Committee and the Plan Administrator determined, based on language in the complete text of the plan, which had not been furnished to Edwards, that he would not receive credit for 200 days of sick leave and was not, therefore, eligible for plan disability benefits. Had Edwards been given credit for this time, or had he returned to work for even one day thereafter, he would have been eligible for plan disability benefits.
 
 
 46
 We affirmed the district court's judgment for Edwards. In doing so, we found that the plan summary would have misled average plan participants, including Edwards, as to the method of calculating service. We also found that Edwards was further misled by the company representative's reassurances and the inaccurate annual statements. Although there are obvious similarities between Edwards and the present case, there are dispositive differences. For one thing, in the present case, neither the Policy nor any SPDs furnished to Hughes reasonably would have misled her into believing that she would be covered as of April 1, 1989, unless she had returned to active employment as of that date. To the contrary, both the Policy and the booklets indicate that actual employment on or after April 1, 1989, was a prerequisite to additional insurance coverage.
 
 
 47
 Moreover, unlike Edwards, this case does not involve a conflict between a plan and an SPD. The Policy and the booklets are consistent in requiring that Hughes had to be actively employed on or after April 1, 1989, in order to be covered for additional life insurance benefits. Thus, Edwards is inapposite. Because the 1988 and 1989 booklets are comprehensible to an average participant or beneficiary and accurate, and because they do not conflict with the Policy, we reject appellant's § 102(a) claim.
 
 D.
 
 48
 Appellant next raises common-law promissory estoppel and misrepresentation claims and a state statutory claim under M.C.L. § 500.4434. The ERISA preemption clause, § 544(a) of ERISA, 29 U.S.C. § 1144(a), "preempts state law and state law claims that 'relate to' any employee benefit plan...." Cromwell v. Equicor Equitable HCA Corp., 944 F.2d 1272, 1275 (6th Cir.1991) (quoting § 544(a) of ERISA), cert. dismissed, 113 S.Ct. 2, and cert. denied, 15 Employee Benefits Cas. 2056 (1992). This preemption clause is to be construed broadly. Id. at 1276 (citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 41 (1987)).
 
 
 49
 This circuit ... has repeatedly recognized that virtually all state law claims relating to an employee benefit plan are preempted by ERISA.... It is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit.
 
 
 50
 Id. (citations omitted).
 
 1.
 
 51
 Appellant seeks to recover Plan benefits on the basis of his promissory estoppel and misrepresentation claims. These claims, however, are unquestionably preempted. See, e.g., Peckham v. Gem State Mutual of Utah, 964 F.2d 1043, 1051 (10th Cir.1992) (promissory estoppel claim preempted); Cromwell, 944 F.2d at 1276 (promissory estoppel and misrepresentation claims preempted); Farlow v. Union Central Life Ins. Co., 874 F.2d 791, 793 (11th Cir.1989) (misrepresentation claim preempted); Daniel v. Eaton Corp., 839 F.2d 263, 266 (6th Cir.) (promissory estoppel claim preempted), cert. denied, 488 U.S. 826 (1988).[8]
 
 2.
 
 52
 Appellant's claim under M.C.L. § 500.4434 fares no better. Although ERISA broadly preempts state laws, state laws that "regulate[ ] insurance" are saved from preemption by the ERISA saving clause. See 29 U.S.C. § 1144(b)(2)(A).
 
 
 53
 [I]n determining whether a state law claim is saved from pre-emption under section 1144(b)(2)(A), we must consider whether the applicable state law: (1) has the effect of transferring or spreading policyholders' risk; (2) constitutes an integral part of the policy relationship between the insurer and the insured; and (3) is limited to entities within the insurance industry.
 
 
 54
 McMahan v. New England Mut. Life Ins. Co., 888 F.2d 426, 429 (6th Cir.1989) (citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 48-49 (1987)).
 
 
 55
 Appellant's argument suffers from two fatal flaws. First, as the text of M.C.L. § 500.4434[9] makes clear, this section imposes a requirement that the insurance policy contain a provision stating that the policy and the applications of the employer and individual applicants constitute the entire contract and stating that an insurer may not, in the absence of fraud, use a statement in defense of a claim unless the statement is contained in a written application. Section 500.4434 sets forth the Michigan requirement for what an insurance policy must contain; this section does not prohibit Aetna or K Mart from actually raising "defenses," i.e., from relying on matters not contained in the policy or in written applications.
 
 
 56
 Even were we to read M.C.L. § 500.4434 to prohibit appellees from raising certain defenses, this statute would apply here only if it survived preemption. Resolution of the preemption issue requires analysis under the three factors enumerated in McMahan. Section 500.4434 does not transfer or spread policyholder risk and, therefore, does not meet the first factor. In McMahan, we concluded that ERISA preempted Kentucky court decisions that had held ambiguous terms in an insurance contract were to be construed against the insurer. Id. at 429. We reasoned: "[T]his general principle of contract construction does not effect a spreading or transferring of policyholders' insurance risk, but rather forces the insurer to bear the legal risks associated with ambiguous policy language." Id. Similarly, even accepting appellant's highly dubious construction of § 500.4434, this statute requires the insurer to bear the risk that statements not included in the written application may not be raised as a defense. Like the principle of contract construction in McMahan, § 500.4434 "forces the insurer to bear the legal risks," id. at 429, associated with incomplete policy language. Therefore, § 500.4434 fails the first prong of McMahan.
 
 
 57
 Section 500.4434 also does not meet the third factor of McMahan. This factor asks whether the statute is limited to entities within the insurance industry. Section 500.4434 is included in the Michigan Insurance Code and thus appears to be specifically directed at the insurance industry. On other hand, this statute essentially is a codification of the parol evidence rule.[10] Therefore, although § 500.4434 is a specific application of the parol evidence rule to the insurance industry, the principles set forth therein are not "limited to entities within the insurance industry." McMahan, 888 F.2d at 429. See also International Resources, Inc. v. New York Life Ins. Co., 950 F.2d 294 (6th Cir.1991) (Where Kentucky Insurance Code provision prohibited unfair or deceptive practices, but remedy was set forth in statute of general applicability, ERISA preempted provision), cert. denied, 112 S.Ct. 2941 (1992); Ramirez, 890 F.2d at 763 (statute contained in Texas Insurance Code "incorporates wholesale the Texas Deceptive Trade Practices Act," a law of general applicability, and thus is not specifically directed at insurance industry). Section 500.4434 fails to survive scrutiny under McMahan and, therefore, this statute does not regulate insurance within the meaning of ERISA and is not saved from preemption by the ERISA saving clause.[11] Because we find that all of appellant's state claims are preempted, we do not reach the underlying merits of these claims.
 
 E.
 
 58
 Appellant's final argument is that K Mart breached its fiduciary duty, as Plan Administrator, by failing, in response to the June 13, 1990, letter from appellant's counsel, to furnish copies of the 1984 booklet or 1988 booklet.[12] Appellant claims that this failure to furnish booklets violates § 104(b)(2) of ERISA, 29 U.S.C. § 1024(b)(2), thus making appropriate an award of damages of up to $100 a day, pursuant to § 532(c) of ERISA, 29 U.S.C. § 1132(c).
 
 
 59
 We reject appellant's argument. The June 13, 1990, letter sent by appellant's counsel to K Mart requested copies of Hughes's enrollment form and the policy. The letter also stated the following:
 
 
 60
 We understand that aside from the explanatory booklet "Employees Group Life Insurance Plan," there is no group life certificate which is issued to employees. The booklet which we have is dated February, 1989, and bears the code designation "943-06-(8191)-(2/89)-fs." We shall assume this is the correct booklet unless you should advise otherwise.
 
 
 61
 Appellant claims that this statement obligated K Mart to respond by furnishing copies of the 1984 and 1988 booklets prior to initiation of this action. We disagree. The letter stated that appellant would assume the 1989 booklet, of which he was in possession, was "the correct booklet" unless he was "advise[d] otherwise." We read the singular "the," together with "correct," to mean that appellant's counsel was only asking to be "advise[d]" if the 1989 booklet was not the correct, i.e., the most current, booklet. Because the 1989 booklet was the most current one, the letter did not require a response. Moreover, the letter requested only that appellant be "advise[d];" the letter did not request that K Mart furnish a copy of any booklet.[13] Thus, appellant's last claim fails.[14]
 
 III.
 
 62
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The parties do not dispute, for present purposes, that the K Mart Plan is covered by ERISA
 
 
 [2]
 Hughes was diagnosed with cancer. She underwent surgery and received written permission from her surgeon to return to work as of April 19, 1989
 
 
 [3]
 This refund check apparently remains uncashed
 
 
 [4]
 We reject appellant's argument that because April 1, 1989, was a Saturday, a day on which Hughes usually did not work, this undercuts the contention that employment on April 1, 1989, was required for coverage. The obvious import of this language is to require an employee to have returned to active employment as of April 1, 1989, not necessarily to be physically on the premises of K Mart on that day
 
 
 [5]
 In his First Amended Complaint, appellant alleged that § 409(a) of ERISA, 29 U.S.C. § 1109, provided the basis for relief for violations of duties owing under §§ 102 and 404 of ERISA, 29 U.S.C. §§ 1022 and 1104. Appellant concedes, on appeal, that he lacks standing under § 409, but argues that his § 102 and § 404 claims alternatively may be brought pursuant to § 1132(a)(3). Appellant raised § 1132(a)(3) as a basis for relief in his Brief in Opposition to Aetna's Motion for Summary Judgment
 We agree that appellant may bring a claim under § 102. However, we believe that the district court correctly rejected appellant's claim for breach of fiduciary duties under §§ 404 and 409. Breach of the duties set forth in § 404 of ERISA, 29 U.S.C. § 1104, constitutes a violation of § 409, 29 U.S.C. § 1109. 29 U.S.C. § 1132(a)(2) empowers a beneficiary to sue on the basis of a violation of § 1109. However, we have held that a § 1109 cause of action may be maintained only on behalf of a plan. See Bryant v. International Fruit Prod. Co., Inc., 886 F.2d 132, 135 (6th Cir.1989). To the extent that appellant contends that he may bring a cause of action for breach of fiduciary duties set forth in § 1104 directly under § 502(a)(3), 29 U.S.C. § 1132(a)(3), without invoking § 1109, we reject this contention.
 
 
 [6]
 The July, 1989, summary of benefits statement sent to Hughes is not an SPD. Flacche, 958 F.2d at 736. Therefore, although Hughes may have relied on inaccuracies in this statement, the statement itself does not trigger § 102(a)
 
 
 [7]
 The parties suggest, without analysis, that the 1988 booklet, the 1989 booklet, or both are SPDs. ERISA does not define the term "summary plan description." Hicks v. Fleming Cos., Inc., 961 F.2d 537, 540 (5th Cir.1992). However, ERISA does set forth certain requirements that must be met for a document to qualify as an SPD. See 29 U.S.C. §§ 1022(a) and (b); Hicks, 961 F.2d at 540 (discussing various tests for ascertaining whether a document qualifies as an SPD). As noted infra, we assume, without deciding, that these booklets would qualify as SPDs
 
 
 [8]
 Appellant cites to Perry v. P*I*E. Nationwide, Inc., 872 F.2d 157 (6th Cir.1989), cert. denied, 493 U.S. 1093 (1990). In Perry, we held that a promissory estoppel claim was not preempted by ERISA where the remedies sought--"rescission of the plan and restitution of the agreed wage reduction"--were unavailable under ERISA. However, in the present case, appellant seeks, not restitution or rescission, but payment of benefits under the Plan. Thus, Perry is inapposite. See Fisher v. Combustion Eng'g, Inc., 976 F.2d 293, 297 (6th Cir.1992). Because ERISA preempts these claims, we need not discuss the Michigan cases cited by appellant
 
 
 [9]
 Section 500.4434 reads as follows:
 There shall be a provision that the policy, the application of the employer and the individual applicants, if any, of the employees insured, shall constitute the entire contract between the parties, and that all statements made by the employer or by the individual employees shall, in the absence of fraud, be deemed representations and not warranties, and that no such statement shall be used in defense to a claim under the policy, unless it is contained in a written application.
 
 
 [10]
 The parol evidence rule "seeks to preserve integrity of written agreements by refusing to permit contracting parties to attempt to alter [the] import of their contract through use of contemporaneous oral declarations." Black's Law Dictionary 1006 (5th ed. 1979)
 
 
 [11]
 Because § 500.4434 fails to meet two of the three Pilot Life factors set forth in McMahan, it is unnecessary to consider whether the statute "constitutes an integral part of the policy relationship between the insurer and the insured...." McMahan, 888 F.2d at 429
 
 
 [12]
 In his Reply Brief, appellant concedes that a copy of the 1988 booklet was furnished to his counsel in October of 1990
 
 
 [13]
 Appellant relies on § 104(b)(2) of ERISA, 29 U.S.C. § 1024(b)(2). This section requires a plan administrator to make "copies ... of the plan description ... available for examination by any plan participant or beneficiary in the principal office of the administrator and in such other places as may be necessary...." Section 104(b)(4), 29 U.S.C. § 1024(b)(4), on the other hand, requires an administrator "upon written request ... [to] furnish a copy of the latest updated summary plan description ... and ... the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."
 Section 104(b)(4), which appears to be applicable here because appellant contends that K Mart should have furnished him with copies of earlier SPDs, only requires that a copy of the "latest" SPD be furnished. Because appellant already had a copy of the 1989 booklet, which appears to have been the "latest" SPD, K Mart was under no ERISA-mandated duty to furnish appellant with copies of the 1984 and 1988 booklets.
 
 
 [14]
 Because we find this reasoning dispositive, it is unnecessary to address K Mart's remaining arguments on this issue