United States Court of Appeals,

Fifth Circuit.

No. 91–2203.

Johnny HICKS, Plaintiff–Appellant,

v.

FLEMING COMPANIES, INC., et al., Defendants–Appellees.

May 27, 1992.

Appeal from the United States District Court for the Southern District of Texas.

Before POLITZ, Chief Judge, REYNALDO G. GARZA and WIENER, Circuit Judges.

WIENER, Circuit Judge:

We are here presented with this court's first opportunity to consider the appropriate test for determining when a document constitutes a summary plan description (SPD) for purposes of the Employment Retirement Income Security Act (ERISA).[1] We hold that a document does so if it contains all or substantially all categories of information required under 29 U.S.C. § 1022 and Department of Labor (DOL) regulations at 29 C.F.R. § 2520.102–3. Applying this test, we find, as did the district court, that the booklet given Plaintiff–Appellant Johnny Hicks by his employer is not an SPD under ERISA. We therefore affirm the district court's summary judgment of dismissal in favor of Appellees.

I. FACTS AND PROCEDURAL HISTORY

The facts in this case are largely uncontested. Hicks worked for White Swan, Inc. (White Swan), a subsidiary of Fleming Companies, Inc. (Fleming), first as a truck loader and later as a truck driver. As fringe benefits for its employees, White Swan sponsors a number of ERISA benefit plans, one of which is a long-term disability benefits plan (the plan) available to clerical employees under the age of seventy and to employees, also under the age of seventy, whose employment is considered

_____

[1] 29 U.S.C. §§ 1001 *et seq.*

exempt under the provisions of the Fair Labor Standards Act of 1938.[2]  As a truck driver and hourly employee, Hicks did not fall within either category, and thus was ineligible for long-term disability benefits under the terms of the plan.  White Swan did not represent to Hicks at the time he was hired that he would be eligible to participate in this plan.

In January 1988, Hicks received a six-page booklet from Fleming, entitled "Your 1988 Total Compensation Report," which purported to summarize the main elements of Fleming's various employee benefit plans, including health care, survivor, retirement, and long-term disability benefits. The booklet was "individualized" for Hicks, that is, it contained personal information about Hicks, including his date of birth, social security number, date of hire, and his elections under various plans. Apparently through some computer glitch, the section of Hicks' booklet concerning the long-term disability benefits plan did not reflect his ineligibility but stated:

> After 180 days of disability, you can receive $1,615 a month, including social security. Payments can continue during total disability:  Up to age 65 or longer if disability begins after age 62.  The maximum family amount from all sources combined is 80% of your pay when disabled.

In its introduction, the booklet represented that it was a "simple but comprehensive summary" containing "personalized information" on Fleming benefits.  The booklet also contained several disclaimers, warning that the information contained in the booklet was merely a summary, that benefit amounts were not final, and that its terms were subject to those in the various benefit plans themselves.  The booklet did not say that it was an SPD, and Fleming apparently did not intend that it be one.  Fleming furnished participants and beneficiaries with copies of an SPD for the long-term disability benefits plan as required by ERISA, but Hicks, like other non-participants, was not furnished one.

---

[2]The long-term disability plan was a premium-funded group plan, underwritten by Travelers Indemnity Company, and administered by Fleming in accordance with the group policy issued by The Travelers.  There is no question but that the long-term disability plan constitutes an "employee welfare benefit plan" under ERISA.  See 29 U.S.C. § 1002(1).

In May 1988, Hicks was injured on the job and became disabled. When he inquired into his long-term disability benefits, White Swan informed him, after some initial confusion,[3] that he was ineligible for that plan. Hicks then brought this ERISA suit against White Swan and Fleming, alleging that he was wrongfully denied his long-term disability benefits. Invoking the venerable "walks like a duck, quacks like a duck" argument, Hicks contended that the booklet is an SPD because it looks like an SPD, contains information required by an SPD, and purports to serve the same purposes as an SPD. As such, Hicks argued, the booklet's terms govern his entitlement to long-term disability benefits. Fleming, on the other hand, asserted that the booklet is not an SPD and thus any variance between the booklet's terms and those of the plan is irrelevant under ERISA. (Subsequently, in *Hansen v. Continental Ins. Co.,* decided after this suit was filed, this court held "that if there is a conflict between the summary plan description and the terms of the policy, the summary plan description shall govern."[4])

After completion of discovery, Fleming filed a motion for summary judgment, contending that the booklet was not an SPD because it did not meet the minimum content and information requirements of ERISA as set forth in § 1022(b). The district court agreed with Fleming and granted summary judgment, holding as a matter of law that the booklet was not an SPD. The district court did not articulate a specific test for deciding whether a document is an SPD, but instead resolved the question of the booklet's status in a narrative comparison of information it contained with the types of information required under § 1022(b). The district court explained:

> Although the booklet provides information regarding Plaintiff's alleged individual benefits, there is no description of the plan itself, such as the source and amounts of money contributed to the plan, the method by which each participant's share is determined, when and how a participant receives payments from the fund, and the expected future of the plan. Further, the

---

[3]White Swan's Vice President of Human Resources first told Hicks that he was eligible for long-term disability benefits and then later told him that he was not.

[4]940 F.2d 971, 982 (5th Cir.1991), adopting the position taken by the Sixth and Eleventh Circuits, in *McKnight v. Southern Life & Health Ins.,* 758 F.2d 1566, 1570 (11th Cir.1985), and *Edwards v. State Farm Mut. Auto. Ins. Co.,* 851 F.2d 134, 136 (6th Cir.1988), respectively.

booklet fails to describe limitations on eligibility. In essence, the booklet on which Plaintiff relies provides a cursory description of Plaintiff's benefits without providing information on the nature of the plan or the limitations on coverage.

Hicks appealed to this court.

## II. ANALYSIS

## A. STATUTORY AND REGULATORY REQUIREMENTS FOR SPD

ERISA requires that welfare benefit plans be governed by formal written plan documents that are prepared and filed in compliance with ERISA's report ing and disclosure rules.[5] One such document, the SPD, is the statutory plain-language mechanism for informing plan participants of the terms of the plan and its benefits. ERISA provides that the plan administrator must furnish the SPD to each participant and beneficiary.[6] ERISA does not define the term "Summary Plan Description"—hence the dispute in this case. Instead, it sets out with great specificity how the SPD must be written and what information it must contain. These requirements are found in §§ 1022(a) and (b):

(a)(1). A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 1024(b) of this title. The summary plan description shall include the information described in subsection (b) of this section, shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan....

(b). The plan description and summary plan description shall contain the following information: The name and type of administration of the plan; the name and address of the person designated as agent for the service of legal process, if such person is not the administrator; the name and address of the administrator; names, titles, and addresses of any trustee or trustees (if they are persons different from the administrator); a description of the relevant provisions of any applicable collective bargaining agreement; the plan's requirements respecting eligibility for participation and benefits; a description of the provisions providing for nonforfeitable pension benefits; circumstances which may result in disqualification, ineligibility, or denial or loss of benefits; the source of financing of the plan and the identity of any organization through which benefits are provided; the date of the end of the plan year and whether the records of the plan are kept on a calendar, policy, or fiscal year basis; the

---

[5]The term "welfare benefit plan" is defined at 29 U.S.C. § 1002(1), and in the DOL's regulations at 29 C.F.R. § 2510.3–1(a)(2).

[6]29 U.S.C. §§ 1021(a)(1), 1024(b).

procedures to be followed in presenting claims for benefits under the plan and the remedies available under the plan for the redress of claims which are denied in whole or in part (including procedures required under section 1133 of this title).

ERISA also requires that the plan administrator file the SPD with the Secretary of Labor. Assuming the Secretary finds it adequate under the law, the SPD is available for public inspection.

DOL regulations significantly extend and amplify ERISA's statutory requirements on the types of information that must be contained in the SPD.[7] For example, DOL regulations require that the SPD include a so-called "statement of ERISA rights,"[8] the employer identification number assigned by the Internal Revenue Service (IRS) to the plan sponsor,[9] and the plan number assigned by the plan sponsor,[10] even though this information is not explicitly required by § 1022(b). Unlike ERISA itself, moreover, DOL regulations clearly identify those categories of information relevant only to pension benefit plans, and, consequently, not required in an SPD for a welfare benefit plan.[11]

## B. THE APPROPRIATE TEST

There are three widely-cited cases that consider whether a document constitutes an SPD: *Kochendorfer v. Rockdale Sash & Trim Co. Inc.,*[12] *Alday v. Container Corp. of America,*[13] and

---

[7]29 C.F.R. § 2520.102–3.

[8]29 C.F.R. § 2520.102–3(t)(1). ERISA provides that plan administrators may be required to furnish each participant and beneficiary with a statement of his or her rights under ERISA. But the statute, unlike the regulation, does not specifically provide that the statement of ERISA rights must be included in the SPD. See 29 U.S.C. § 1024(c).

[9]29 C.F.R. § 2520.102–3(c).

[10]Id.

[11]29 C.F.R. § 2520.102–3.

[12]653 F.Supp. 612 (N.D.Ill.1987).

[13]906 F.2d 660 (11th Cir.1990), *cert denied,* —— U.S. ——, 111 S.Ct. 675, 112 L.Ed.2d 668 (1991).

*Gridley v. Cleveland Pneumatic Co.*[14] In *Kochendorfer,* the first case to consider this issue, an Illinois district court found that a "record-keeping booklet" was an SPD, "albeit an abridged one." The court stated:

> We do not believe that Congress intended to exclude from the term "summary plan description" every document which lacks some of the information required in section 1022(b). Rather, any document a plan distributes to its participants which contains all or substantially all of the information the average participant would deem crucial to a knowledgeable understanding of his benefits under the plan shall be deemed a summary plan description. The crucial information which any document must contain before it could be deemed a summary plan description includes an explanation of the benefits and the circumstances which may disqualify a participant from securing benefits.[15]

*Kochendorfer* went on to rule that the booklet in question was an SPD because it described, in a manner calculated to be understood by the average plan participant, such things as the plan's purpose, the source and amounts of money contributed, the method by which shares are determined, when and how payment is received, and how funds are invested.[16]

In *Alday,* the Eleventh Circuit ruled that an individualized booklet, which was entitled "Summary of Personal Benefits" and which said nothing more about the company's health insurance plan than "health insurance is available to you and your dependents at a modest cost," was not an SPD under ERISA. The court reasoned that the booklet did not satisfy the requirements in § 1022; specifically, the booklet neither described the plan's terms, specified the plan's benefits or coverage, defined the plan's eligibility requirements, nor otherwise gave participants the information necessary to participate in the plan's health insurance program.

In the most complete treatment of this issue to date, the Third Circuit, in *Gridley,* adopted a fact-intensive approach in determining that a brochure, entitled "Employee Benefits Summary," was

---

[14]924 F.2d 1310 (3rd Cir.1991), *cert denied,* ⸺ U.S. ⸺, 111 S.Ct 2856, 115 L.Ed.2d 1023 (1991).

[15]653 F.Supp. at 615–16.

[16]*Id.* at 616.

not an SPD for a life insurance plan, even though the booklet purported to provide an overview of the company's plan. *Gridley* based its decision on four factors: (1) the brochure instructed employees to refer to their SPDs, hence no reasonable reader could have thought the brochure an SPD; (2) the brochure lacked ten of twelve categories of information required under § 1022(b); (3) the brochure was a perfunctory description of subjects treated in other documents that were SPDs; and (4) the brochure was an updated version of an earlier brochure that was not an SPD.

In this case, Hicks asserts that *Kochendorfer* supplies the appropriate test for deciding whether a document is an SPD under ERISA. Hicks characterizes *Kochendorfer* as looking to the employee's *subjective* understanding of the document. Hence, he argues, the booklet is an SPD, and its terms are binding on Fleming under ERISA, because he understood the booklet to mean that he was eligible for long-term disability benefits. As the foregoing quotation shows, however, Hicks misunderstands *Kochendorfer* because that case quite obviously adopts an *objective,* "reasonable participant" test.

Fleming, on the other hand, contends that the booklet cannot be an SPD as it does not contain *all* twelve categories of information required by § 1022(b). Fleming asserts that the operative word in the first sentence of § 1022(b) is "shall," indicating that ERISA itself requires this rule of strict compliance. Hicks counters that Fleming's approach is not strictly mandated by ERISA—§ 1022(b) states that an SPD must contain twelve categories of information, not that a document that does not include all twelve categories is not an SPD.

We believe that Fleming urges the better rule, although we acknowledge Hicks's point that this rule is not strictly required by ERISA. We reject *Kochendorfer*'s premise that Congress did not intend to exclude as an SPD every document that lacks § 1022(b) information because such a premise would set a trap for the unwary employer who circulates benefit information in writing and at the same time would have a chilling effect on the cautious employer who might otherwise write freely

to his or her employees about their benefit plans. We believe that speculation as to congressional intent on this point would be more accurate if phrased in the converse: We do not believe Congress intended the term SPD to include every document that contains some of the information required in § 1022(b).

We hold, therefore, that the appropriate test for determining if a document constitutes an SPD under ERISA is to see whether it contains all or substantially all categories of information required under 29 U.S.C. § 1022(b) and the DOL's regulations at 29 C.F.R. § 2520.102–3 for the type of benefit in question. We emphasize that DOL's regulations at § 2520.102–3 are especially critical to this determination because they expand on the requirements in § 1022(b) and clarify the information required for each of type of benefit plan.[17]

In large part, we adopt this bright-line approach because we are unwilling to declare that a document could constitute an SPD under ERISA even though it does not satisfy the information requirements in § 1022(b) and § 2520.102–3, and, thus, would not be accepted by the Secretary of Labor for filing and publication. If a document is to be afforded the legal effects of an SPD, such as conferring benefits when it is at variance with the plan itself, that document should be sufficient to constitute an SPD for filing and qualification purposes. Quite simply, there should be no accidental or inadvertent SPDs. In addition, "reasonable participant" or case-by-case tests—with their inevitable hair-splitting factual distinctions and litigation-encouraging ambiguities—would introduce considerable uncertainty into this area of law, to the ultimate detriment, no doubt, of all parties.[18]

---

[17]Although we leave open the possibility that a document containing not all but substantially all information required under ERISA and its regulations might be an SPD under ERISA, we believe that such a case would be the exception not the rule. Such a situation might arise, for example, if a plan sponsor intends a document to be SPD, states that it is an SPD, and includes in the document most information required under ERISA and its regulations, but, perhaps due to inadvertence, omits some small item of required information.

[18]We stress that our holding does not mean that a document, which does not constitute an SPD under the test articulated in this case, cannot be some other type of plan document under ERISA. See *Etherington v. Bankers Life & Cas. Co.,* 747 F.Supp. 1269, 1276 (N.D.Ill.1990) (benefits booklets do not meet ERISA requirements for either plan description or SPD). Neither

C. APPLICATION OF TEST TO THE BOOKLET

When we compare the information required in § 1022(b) and § 2520.102–3 to the booklet at issue here, it is clear that the booklet is not an SPD. Frankly, the question is not even close. Although the booklet includes some cursory information on monthly payments under the long-term disability benefits plan, it contains *none* of the information required under § 1022(b) and § 2520.102–3 on the plan's management and rules, such as the name and type of administration of the plan; the name and address of the person designated as agent for the service of legal process; the source of financing of the plan and the identity of any organization through which benefits are provided; the date of the end of the plan year and whether the records of the plan are kept on a calendar, policy, or fiscal year basis; the procedures to be followed in presenting claims for benefits under the plan and the remedies available under the plan for the redress of claims that are denied in whole or in part. Neither does the booklet contain the information required by DOL regulations alone, such as the employer identification number assigned by the IRS to the plan sponsor; the plan number assigned to the plan sponsor; and the so-called statement of ERISA rights.

## III. CONCLUSION

We hold that a document is a summary plan description under ERISA if it contains all or substantially all categories of information required under 29 U.S.C. § 1022 and Department of Labor regulations at 29 C.F.R. § 2520.102–3. Finding that the booklet in this case does not meet this test, we AFFIRM the judgment of the district court.

---

do we rule that a document is not an SPD if, although containing all or substantially all requisite categories of information, it is found to be so inadequate that the SPD is not in compliance with ERISA. See, e.g., *Hansen,* 940 F.2d at 981–82 (ambiguity in SPD created by careless or inaccurate drafting held against employer); and *McKnight,* 758 F.2d at 1570 (retirement plan's SPD not an accurate interpretation of original pension plan).