**COOPERATIVE BENEFIT ADMINIS-TRATORS, INC. (in its capacity as a named fiduciary of the National Rural Electric Cooperative Association Long–Term Disability Plan)**

v.

**Dale R. OGDEN**

No. 00–272–C.

United States District Court, M.D. Louisiana.

April 28, 2003.

666

G. Robert Collier, Jr., Esq., Michael L. DuBos, Esq., The Boles Law Firm, Monroe, for Plaintiff.

Ronald J. Savoie, Esq., Losavio Law Firm, Baton Rouge, for Defendant.

***RULING ON DEFENDANT'S MOTION TO DISMISS AND MOTION FOR PARTIAL SUMMARY JUDGMENT AND ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT***

TYSON, District Judge.

This matter is before the court on the following motions: (1)Defendant Dale R. Ogden's Motion to Dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction under the Employment Retirement Income Security Act ("ERISA"), and pursuant to Rule 12(b)(7) for lack of indispensable parties; (2) Defendant/Plaintiff-in–Counterclaim Dale R. Ogden's Motion for Partial Summary Judgment pursuant to Rule 56(d); and (3) the Motion for Summary Judgment filed on behalf of Plaintiff/Defendant–in–Counterclaim Cooperative Benefit Administrators. Jurisdiction is allegedly based upon a federal question, 29 U.S.C. § 1132 *et seq.,* as it relates to ERISA and the federal common law claim of unjust enrichment.

Oral arguments in this matter were held before the Court on March 6, 2003, after which the matter was taken under submis-

sion. Having thoroughly considered the record, the memoranda of law submitted by the parties, and the arguments of counsel for both sides, for the reasons which follow, the Court now finds that Ogden's Motion to Dismiss should be denied, Ogden's Motion for Partial Summary Judgment should be denied, and Cooperative Benefit Administrators' Motion for Summary Judgment should be granted.

### Factual Background

Cooperative Benefit Administrators, Inc.("CBA") is a wholly-owned subsidiary of the National Rural Electric Cooperative Association ("NRECA").[1] Among the many services the NRECA provides for its members is a long-term disability plan ("the LTD Plan"). CBA is the claims adjudicator of the NRECA LTD Plan, which is a self-insured plan subject to ERISA. Dale Ogden ("Ogden") is an employee of Cajun Electric Cooperative, Inc.("Cajun Electric"), which is a member of the NRECA. Cajun Electric offered the LTD Plan to its employees and Ogden enrolled in the plan. Under this plan, a disabled employee is entitled to receive two-thirds of his or her regular monthly earnings. The LTD Plan allows CBA to estimate the monthly social security benefits that the employee would be entitled to and to deduct that amount from the employee's monthly disability benefit. Since there is often a substantial delay between the time that an employee becomes disabled and the time that he or she begins to receive social security benefits, the plan gives participants the option of executing a reimbursement agreement which authorizes CBA to pay a monthly disability benefit which does not include an offset for social security benefits if the participant

promises to repay CBA any overpayment caused by an award of social security benefits.

On April 11, 1995, Ogden filed a claim for disability benefits due to an injury she sustained on October 14, 1994. On April 28, 1995, CBA approved the claim and agreed to pay Ogden two-thirds of her regular monthly earnings, or $996.77 per month. On June 5, 1995, CBA informed Ogden that she and her two minor daughters had become eligible for social security disability benefits as of April 1, 1995, and that she should apply for those benefits. CBA also informed Ogden that it would continue to pay full benefits to her until she began receiving social security disability payments if Ogden executed a Social Security Reimbursement Agreement ("RA") and submitted a copy of her application for social security disability benefits.

Ogden executed the requisite RA on June 22, 1995, authorizing CBA to advance her a monthly LTD benefit that did not include an offset for social security disability benefits. Under the terms of the LTD Plan and the RA, Ogden was obligated to repay the benefits that had been advanced without taking the social security offset within 30 days of her receipt of any proceeds from the Social Security Administration ("SSA"). In that regard, the LTD Plan § 7.10 provides:

> (a) CBA shall use such information as is available to it to estimate the amount of the benefit that is or may be available to the Participant and shall offset any benefit due to a Participant under the Plan by the estimated amount of the benefit unless the Participant agrees as provided in paragraph (b) to reimburse the Plan when any benefits are paid.

1. The NRECA operates as a national trade association for rural electric cooperatives throughout the United States.

(b) Estimated benefits that would otherwise be offset in accordance with paragraph (a) above will be advanced to the Participant if the Participant... agrees in writing, on forms provided by CBA, to pay back the benefits advanced to the extent of any payments received within 30 days of receipt of payment.

(c) In the event the Participant fails to repay benefits advanced by CBA as provided in paragraph (b) above, then, in addition to any other rights or remedies available to it, CBA may recoup the advanced benefits by exercising a right of setoff against any current or future benefits payable to the Participant under this Plan... CBA shall be entitled to setoff the principal amount of the benefits advanced, plus interest at eight percent compounded annually, and any costs and attorneys' fees associated with recouping the advanced benefits.

The LTD Plan § 7.12 also provides that:

(a) Any payments for, in lieu of, in substitution for or in commutation of, any of the Benefit Offsets provided in this Section VII shall be offset whether the payment is made to, or on behalf of, the Participant, the Participant's spouse or any dependent of the Participant.

(b) All of the offsets provided in this Section VII shall be applied whether or not payment is made to, or on behalf of, the Participant, the Participant's spouse or dependents, if in the judgment of CBA such payments would be payable if the Participant made timely application for them.

In the RA that Ogden executed, she unconditionally promised:

*      *      *      *      *      *

3.  To repay CBA the amounts advanced to me in accordance with the offset provisions of the [LTD] plan and this Reimbursement Agreement within 30 days of my receipt of the proceeds of any benefits, awards, or payments recovered from Social Security...The repayment will not exceed the amount of the benefits, awards, or payments recovered from Social Security, except that it shall include interest, costs, and attorneys' fees as provided in this RA...

*      *      *      *      *      *

5.  In the event I do not repay CBA for the amounts advanced to me in accordance with the terms of the offset provisions of the [LTD] Plan and this RA within 30 days of my receipt of any Social Security proceeds, I shall also be liable for and promise to pay attorneys' fees and costs incurred in the enforcement of this RA plus eight percent interest... the principal amount of the benefits advanced that are not repaid to CBA within 30 days.

6....CBA may recoup the advanced benefits by exercising a right of setoff against any current or future benefits payable to me under the LTD Plan...CBA shall be entitled to setoff the principal amount of the benefits advanced plus interest at eight percent compounded annually and any costs and attorneys' fees associated with recouping the advanced benefits.

Subsequent to Ogden's execution of the RA, the SSA denied Ogden's claim for disability benefits. In response to this denial, CBA offered, and Ogden accepted, the services of Allsup, Inc., to assist Ogden in her appeal of the denial of social security benefits. On October 31, 1997, more than two years after Ogden signed the RA, the SSA determined that Ogden was eligible to receive monthly Social Security benefits in the amount of $841.00 and a lump sum payment of $26,808 for retroactive disability benefits back to October 14, 1994. In addition, the SSA determined that Ogden's dependents were eligible to re-

ceive lump sum Social Security benefits in the amount of $27,624.00.

In December 1997, CBA began to offset Ogden's disability payments based on the Social Security disability benefit that she received. As of February 2001, as a result of these awards, Ogden had received, after deducting amounts offset by CBA, $22,784.74 in overpayments from the LTD Plan.

While pursuing Ogden's Social Security disability benefits, CBA also learned that Ogden had terminated her employment with Cajun Electric and that she would be receiving a retirement pension benefit of $66.52. CBA then notified Ogden by letter that her disability disbursement would be offset by the retirement pension benefit amount. CBA also informed Ogden that, pursuant to some ERISA amendments, if a recipient of disability payments also received pension benefits that were maintained in an Individual Retirement Account ("IRA"), that recipient could prevent those pension benefits from being used to offset his or her disability benefits by providing a document illustrating any activity of the IRA. Ogden failed to provide CBA with such documents. As a result, CBA further offset Ogden's disability disbursement by her retirement pension amount of $66.52.

On February 2, 1998, CBA made written demand to Ogden for reimbursement of the amount which CBA alleged Ogden had been overpaid due to the Social Security disability benefits award. Despite several demands by CBA, Ogden failed to make any repayment to CBA. On November 17, 1998, CBA informed Ogden that it would suspend future payment of her disability benefits if the benefit overpayment of $27,693.86, was not repaid within thirty days of the date of the letter. On December 8, 1998, CBA informed Ogden that it was suspending payment of her disability

benefits and explained the appeals process whereby Ogden could challenge the suspension of her benefits with CBA's assistant manager within 90 days of receipt of the letter. Ogden failed to file a timely appeal. CBA then began recouping overpaid benefits by exercising its setoff rights under § 7.10(c) of the LTD Plan. Finally, on February 23, 1999, CBA informed Ogden that it would initiate collection proceedings against her and, on April 11, 2000, CBA filed the instant action against Ogden to recover benefit overpayments of $22,784.74 made under the LTD Plan, attorneys' fees and court costs.

## I. OGDEN'S MOTION TO DISMISS

In its complaint, CBA based its reimbursement claim on two alternate theories of recovery: (1) a restitution claim under Section 502(a)(3) of ERISA; and (2) a federal common law claim of unjust enrichment. The bases of Ogden's Motion to Dismiss are that, pursuant to Rule 12(b)(1), the court lacks subject matter jurisdiction over the action with respect to both of CBA's theories of recovery; and that, pursuant to Rule 12(b)(7), indispensable parties were not named as parties to this action.

### A. Ogden's Rule 12(b)(1) Motion

Ogden claims that the court lacks subject matter jurisdiction because CBA's alleged ERISA claim is merely a "garden-variety" state-law contract claim and not an equitable restitution claim arising under 29 U.S.C. § 1132(a)(3). In support of this assertion, Ogden points to Paragraph 1 of CBA's original complaint, which alleges:

...Specifically, CBA seeks a determination of its right to recover, pursuant to 29 U.S.C. § 1132(a)(3), an overpayment of long-term disability benefits in the amount of $27,693.86, plus attorneys' fees and costs incurred in this action

pursuant to 29 U.S.C. § 1132(g). Alternatively, CBA seeks to recover the overpayment. pursuant to federal common law.

Ogden characterizes this allegation as a matter of making the legal appear to be equitable, in order to turn a state law contracts case into a federal case. Relying forthrightly upon the United States Supreme Court's decision in *Great–West Life & Annuity Ins. Co. v. Knudson,*[2] Ogden argues that CBA's case should be dismissed with prejudice because CBA is seeking legal, rather than equitable, restitution. Ogden asserts further that the court should also dismiss CBA's federal common law claim of unjust enrichment, arguing that the Fifth Circuit, in *Morales v. Pan American Life Ins. Co,*[3] does not authorize this cause of action in an ERISA case.

In opposition, CBA counters that federal jurisdiction is proper under its equitable restitution theory pursuant to the ERISA statute, 29 U.S.C. § 1132(e)(1), and under its unjust enrichment theory pursuant to the statute conferring jurisdiction over cases arising under federal law, 28 U.S.C. § 1331. With regard to its equitable restitution theory, CBA argues that it still has a viable Knudson equitable restitution claim since it seeks to recover. in equity specific social security benefits that have

been paid to and are in the possession, custody or control of Ogden, and which, in good conscience belong to CBA.[4] With regard to its unjust enrichment theory, CBA urges this court to follow post-Knudson case law affirming the viability of an unjust enrichment claim under the federal common law of ERISA.[5]

The Court notes that during oral argument and in its supplemental brief, CBA tacitly conceded that Knudson forecloses its right to assert a private cause of action directly under ERISA for reimbursement of the overpayment to Ogden. CBA also conceded that it has not pled out a viable Knudson equitable restitution claim since it moved the court to re-open discovery in order for CBA to trace the location and amount of social security disability benefits in the possession, custody or control of Ogden. Thus, the Court finds that, in light of Knudson, § 1132(a)(3)(B) does not provide a cause of action in this case. However, the Court also finds that Knudson does not foreclose claims under the federal common law of unjust enrichment.[6] The court will, therefore, analyze jurisdiction under 28 U.S.C. § 1331 with respect to CBA's reimbursement claim.

Federal district courts have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States.[7] It is well settled that

**2.** *Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002).

**3.** *Morales v. Pan American Life Ins. Co.,* 914 F.2d 83 (5th Cir.1990).

**4.** *See IBEW NECA Southwestern Health and Benefit Fund v. Douthitt,* 211 F.Supp.2d 812 (N.D.Tex.2002)(citing *Knudson* and *Bauhaus USA, Inc. v. Copeland,* 292 F.3d 439 (5th Cir.2002)(holding that the plan was seeking equitable relief under § 1332(a)(3) because, unlike former ·cases, the funds were clearly traceable .to the beneficiary and were within the beneficiary's possession and control).

**5.** *UNUM·Life Ins. Co. v. Long,* 227 F.Supp.2d 609 (N.D.Tex.2002); *Provident Life & Accident Ins. Co. v. Cohen,* 193 F.Supp.2d 845 (D.Md.2002); *Forsling v. J.J. Keller & Assoc.,* 241 F.Supp.2d 915, 918 (E.D.Wis.2003) (Knudson does not bar an action to obtain reimbursement for benefits advanced to a beneficiary).

**6.** *Knudson,* 534 U.S. at 221, 122 S.Ct. 708.

**7.** 28 U.S.C. § 1331.

" § 1331 jurisdiction will support claims founded upon federal common law as well as those of a statutory origin." [8] However, the creation of ERISA federal common law establishes "arising under" jurisdiction only where the issue in dispute is of central concern to the federal statute. [9] Hence, the Court is constrained to fashion only those remedies that are appropriate and necessary to effectuate the purposes of ERISA. [10] In addition, the Court is mindful that interstitial federal lawmaking is a basic responsibility of the federal courts due to the inevitable incompleteness presented by the enactment of complex and comprehensive legislation, such as ERISA. [11] The Court understands, too, that well-settled statutory and case law provides that ERISA preempts state law in employee benefit plan regulation. Thus, there can be no recompense under state law. [12]

That being said, the Fifth Circuit has long recognized that a federal common law right of restitution is available under ERISA to recover the overpayment of benefits. In *Jamail, Inc. v. Carpenters District Council of Houston Pension & Welfare Trusts*, the Fifth Circuit held that the employer had a federal common law right of restitution under ERISA. [13] In that case, the employer sought restitution for $51,434.68 in erroneously-paid contributions to multi employer trust funds on behalf of employees. There, the Fifth Circuit stated the following:

> Both the legislative history and the case law pursuant to ERISA validate our application of federal common law to ERISA. The legislative history explains that due to the broad preemption provisions, 'a body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans.'.. The case law pertaining to ERISA also supports the application of common law to the statute. We have recently said: 'Congress intended that federal courts should create federal common law when adjudicating disputes regarding ERISA.'(Citations omitted.) [14]

Likewise, post-Knudson case law applies federal common law to ERISA and endorses unjust enrichment as a viable cause of action to recover overpayments made to participants such as Ogden. [15]

**8.** *Provident Life and Accident Ins. Co. v. Waller*, 906 F.2d 985, 988 (4th Cir.1990) (citing *Illinois v. City of Milwaukee*, 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712(1972)).

**9.** *Waller*, 906 F.2d at 990 (citing *Airco Industrial Gases v. Teamsters Health & Welfare Pension Fund*, 850 F.2d 1028, 1033 (3d Cir. 1988)).

**10.** *Waller*, 906 F.2d at 992.

**11.** *Jamail, Inc. v. Carpenters District Council of Houston Pension & Welfare Trusts*, 954 F.2d 299 at 303 (citing *United States v. Little Lake Misere Land Co., Inc.*, 412 U.S. 580, 594, 93 S.Ct. 2389, 2397, 37 L.Ed.2d 187 (1973)). In *United States v. Little Lake Misere Land Co., Inc.*, the Supreme Court held that the application of federal common law to a statute is not an example of the judiciary rewriting legislation. The Jamall court went on to state that,

"[T]o the contrary, whenever Congress enacts complex and comprehensive legislation, such as ERISA, minor gaps in the legislation are unavoidable. Congress cannot be expected to perceive in advance all the ramifications of its legislation. It is the judiciary's role, therefore, to fill in these gaps."

**12.** *Jamail*, 954 F.2d at 302. *See* also 29 U.S.C. § 1132(e)(1), which provides that ERISA grants the federal courts "exclusive jurisdiction of civil actions under this title brought by...[a] fiduciary."

**13.** *Id.* at 304.

**14.** *Id.* at 303.

**15.** *UNUM Life Ins. Co. v. Long*, 227 F.Supp.2d 609 (N.D.Tex.2002). UNUM moved for summary judgment and the court *sua sponte* ques-

■ Thus, the Court finds that an allegation of unjust enrichment states a cause of action under the federal common law of ERISA. The question remains, however, whether CBA sufficiently pled this cause of action in its complaint.

■ Rule 12(b)(1) of the Federal Rules of Civil Procedure governs challenges to a court's subject matter jurisdiction. As a preliminary matter, the Fifth Circuit instructs that, when considering a motion under Rule 12(b)(1), the court should discern whether the defendant is making a "facial" or "factual" attack upon the complaint with regard to subject matter jurisdiction.[16] A "facial attack" on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, while a "factual attack" upon the complaint challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings may be considered.[17] The Court finds Ogden's attack in this case to be facial, as no evidentiary materials are attached to the motion.

■ Under Rule 12(b)(1), a case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case.[18] As the party invoking jurisdiction, the plaintiff carries the burden of establishing subject matter jurisdiction.[19] A district court may dismiss an action for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; and (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.[20] In examining whether a plaintiff has sufficiently alleged a basis for subject matter jurisdiction, the court must take all of the plaintiff's allegations in the complaint as true.[21] In addition, the court may resolve disputed facts on its own in determining whether subject matter jurisdiction is proper in a case.[22] Only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief should a district

tioned whether it had jurisdiction in light of Knudson. UNUM tacitly conceded that Knudson may have foreclosed its right to assert a private cause of action directly under ERISA for reimbursement of the overpayment to Long, but maintained that it was still entitled to pursue its claim for unjust enrichment under federal common law. The court agreed, finding that there was jurisdiction under the federal common law of unjust enrichment. The UNUM court ruled that "[n]othing in Great–West, which involved only statutory claims brought under section 502(a)(3) of ERISA, precludes an insurer from enforcing its rights through traditional common law remedies." *See* also *Provident Life and Accident Ins. Co. v. Cohen,* 193 F.Supp.2d 845 (D.Md.2002).

16. *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir.1980).

17. *Id.* at 511.

18. *Home Builders Ass'n of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187 (2d Cir. 1996)).

19. *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994).

20. *Barrera–Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir.1996) (quoting *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.1981)); *See* also *MCG, Inc. v. Great Western Energy Corp.,* 896 F.2d 170, 176 (5th Cir. 1990).

21. *Menchaca,* 613 F.2d at 510.

22. *Barrera–Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir.1996).

court grant a Rule 12(b)(1) motion.[23] Finally, the court's dismissal for lack of subject matter jurisdiction is not a decision on the merits and does not prevent the plaintiff from pursuing the claim in a court of proper jurisdiction.[24]

Girded by these principles, the Court examined CBA's original complaint and reviewed the case law relied upon by the parties in order to ascertain whether CBA sufficiently alleged a basis of subject matter jurisdiction. The court finds that, even though Knudson vitiates CBA's claim under Section 502(a)(3), CBA has, nevertheless, made out a viable federal common law claim of unjust enrichment, such that a Rule 12(b)(1) dismissal is not warranted.

Although Ogden cited and relied upon *Morales v. Pan American Life Ins. Co.* as support for her Rule 12(b)(1) motion, that reliance is misplaced.[25] In Morales, former employees filed a class action against their former employer, claiming that their former employer was unjustly enriched as a result of the employer terminating a benefits plan which had residual assets. The Fifth Circuit there considered whether, under an unjust enrichment theory, former employees were entitled to residual benefits resulting from a plan's termination, where the former employees had no contractual or statutory entitlement to surplus funds and where the existing surplus was not created by former employee contributions. Against this backdrop, the Fifth Circuit held that no statutory purpose would be served by the creation of a federal common law of unjust enrichment and third-party beneficiary claims.[26]

Clearly, the facts and issues presented in the Morales case are not analogous to this case. Morales involved plaintiffs that had no contractual or statutory entitlement to surplus funds, whereas the plaintiff in this case has a contractual entitlement to recoupment of overpayments. Thus, this Court has jurisdiction over this matter pursuant to its federal question jurisdiction, 28 U.S.C. § 1331. Consequently, Ogden's Motion to Dismiss pursuant to Rule 12(b)(1) will be DENIED.

Ogden next argues that CBA is not entitled to attorneys' fees, relying on the Rules of Decision Act, 29 U.S.C. § 1652, as authority that Louisiana law will control the availability of attorneys' fees.[27] Under Louisiana law, Ogden argues, attorneys fees are not recoverable under CBA's complaint. In opposition, CBA argues that attorneys' fees are recoverable under 29 U.S.C. § 1332(g) and as a specific remedy under the terms of the LTD Plan.

The Court finds that since this case is proceeding under federal question jurisdiction, the Court may exercise supplemental jurisdiction over related state claims.[28] Here, the explicit language of the ERISA LTD Plan[29] as well as 29 U.S.C. § 1332(g)

---

**23.** *Home Builders Ass'n of Miss., Inc.,* 143 F.3d at 1010 (quoting *Benton v. United States,* 960 F.2d 19, 21 (5th Cir.1992)).

**24.** *Id.* at 1010.

**25.** *Morales,* 914 F.2d 83 (5th Cir.1990).

**26.** *Morales,* 914 F.2d at 87.

**27.** *See* 29 U.S.C. § 1652, which provides that the "laws of the several states, except where the Constitution or Treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as the rules of decision in civil actions in the courts of the United States, in cases where they apply."

**28.** 28 U.S.C. § 1367(a).

**29.** LTD Plan 7.10(b)(vii) provides: "for the payment of interest at eight percent compounded annually on the principal amount of the benefits advanced that are not repaid within 30 days and for the payment of costs and attorneys' fees to CBA for the enforcement of the Reimbursement Agreement." Enforcement of LTD § 7.10(b)(vii) is appro-

provide that CBA may recover its attorneys' fees if successful in this litigation.[30] Consequently, Ogden's Motion to Dismiss this claim on this basis will also be DENIED.

### B. Rule 12(b)(7) Motion

■ Ogden argues that dismissal is required because her two daughters are indispensable parties who have not been joined and that she is at risk of inconsistent judgments if her daughters are not joined in this action. In opposition, CBA contends that Ogden's argument is flawed because Ogden is the only person who was entitled to the advances from the LTD Plan and she is the only person who promised to repay all the advances, despite the fact Social Security actually paid some benefits directly to her daughters. CBA contends further that Ogden's daughters have absolutely no legal stake in the dispute and, therefore, are not necessary, let alone, indispensable parties under Fed. R.Civ.P. 19(a).

■ Rule 12(b)(7) of the Federal Rules of Civil Procedure allows the dismissal of an action for failure to join an indispensable party under Rule 19. The purpose of Rule 19 is to permit joinder of all materially interested parties to a single lawsuit ꞏso as to protect interested parties and avoid waste of judicial resources.[31] Rule 19 allows a person to be joined as a party in an action if in the person's absence complete relief cannot be accorded among those already parties.[32] The district court has discretion to require persons to be made parties upon timely request, or *sua sponte*. However, as a general rule, to establish a claim of indispensability, a movant must at least produce evidentiary materials from which the court can make the findings of fact upon which the claim is based.[33]

■ In order to determine whether a party is indispensable to the action, the Fifth Circuit has set forth the following factors which a court must consider: (1) to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.[34]

Initially, the Court finds it telling that Ogden failed to produce any evidentiary materials from which the Court can make findings of fact on the question of indispensability. Aside from her conclusory allegations, there has been no showing how Ogden is prejudiced by CBA's failure to join her daughters; no evidence was pro-

---

priate as specific enforcement of the LTD Plan under § 1132(a)(3)(B).

**30.** *See Cooperative Benefit Administrators, Inc. v. Whittle*, 989 F.Supp. 1421, 1434 (M.D.Ala. 1997)(in accordance with the Reimbursement Agreement the Plan is entitled to costs and attorneys' fees incurred in obtaining remedy). *See also Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir.1980)(court established non-exhaustive 5 factor test for determining merit of awarding attorneys' fees under ERISA and noted that a fiduciary's duty to bring suit may cut in favor of attorneys' fees).

**31.** *Moore v. Ashland Oil, Inc.*, 901 F.2d 1445, 1447 (7th Cir.1990).

**32.** Fed.R.Civ.P. 19(a) & (b).

**33.** *See Dunlop v. Beloit College*, 411 F.Supp. 398 (W.D.Wis.1976)

**34.** *See Dayton Indep. Sch. Dist. v. U.S. Mineral Prods. Co.*, 906 F.2d 1059, 1068 (5th Cir. 1990).

duced regarding the possible basis for a suit against her daughters; there is no evidence as to how Ogden or her daughters might be subject to inconsistent relief or multiple litigation; no evidence that Ogden is more vulnerable to subsequent lawsuits absent the joinder of her daughters; and no evidence as to what tangible interests are at stake against her daughters.

Nevertheless, having given the above factors due consideration, the Court cannot conclude that Ogden's daughters are indispensable to CBA's action. With respect to the first two factors, the absence of Ogden's daughters would not be prejudicial to any of the parties nor to Ogden. Regarding the third factor, the Court finds that in the absence of Ogden's daughters complete relief can be accorded among those already parties. The absence of Ogden's daughters will not subject Ogden to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. Thus the Court finds that the daughters are not indispensable parties and that this litigation should proceed among the parties currently before the Court. Accordingly, Ogden's motion to dismiss on the grounds of failure to name indispensable parties under Rule 19 will be **DENIED**.

## II. CROSS MOTIONS FOR SUMMARY JUDGMENT

Under the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [35] The moving party "always bears the initial responsibility of informing the district court of the basis for its motions, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." [36] The movant may discharge his burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.[37] The court must view facts and inferences from the evidence in light most favorable to the non-moving party.[38]

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file," designate 'specific facts showing that there is a genuine issue for trial." [39] To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." [40] On the other hand, the evidence of the nonmovant must be be-

---

**35.** Fed.R.Civ.P. 56(c). *See Whittle,* 989 F.Supp. at 1427 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). *See* also *Rodrigue v. Western and Southern Life Insurance Co.,* 948 F.2d 969 (5th Cir.1991).

**36.** *Whittle,* 989 F.Supp. at 1427 (citing *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548).

**37.** *Whittle,* 989 F.Supp. at 1427 (citing *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548).

**38.** *Crescent Towing v. M/V Anax,* 40 F.3d 741, 743 (5th Cir.1994).

**39.** *Whittle,* 989 F.Supp. at 1427 (citing *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548).

**40.** *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

lieved and all justifiable inferences must be drawn in its favor.[41]

After the nonmoving party has responded to the motion for summary judgment the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[42]

### A. Motions for Summary Judgment on Ogden's Counterclaim

Ogden moves for summary judgment in her favor and against CBA on the counts listed in her counterclaim. CBA moves for summary judgment in its favor and against Ogden on these same counts. In her motion for summary judgment, Ogden prays that this court enter partial summary judgment: (1) dismissing on the merits CBA's federal common law claim of unjust enrichment, after finding that CBA accepted a March 29, 1999 offer to pay the Social Security offset attributable to Ogden from withheld benefit payments; (2) dismissing on the merits the claim that she owes CBA for any amounts received by her daughters; and (3) declaring that the pension offset is not applicable to an IRA rollover. The Court now considers each claim in turn.

### (1) CBA's Unjust Enrichment Claim

In her motion for summary judgment, Ogden contends that, under the unclean hands doctrine, CBA should not be afforded any equitable remedies. Ogden argues that CBA's lack of response to a settlement offer—made by her spouse in a March 29, 1999 letter—constitutes an acceptance of the proposal and estops CBA

from instituting this action to recover overpayments. Ogden maintains that CBA had actual knowledge that Ogden would treat CBA's silence as acquiescence by virtue of a May 31, 1999 letter written by Mr. Ogden stating the same. As evidence of CBA's acceptance, Ogden relies on the fact that CBA began withholding Ogden's benefits in late 1998. Ogden argues that CBA breached its fiduciary duty of truth by concealing from the Ogdens the fact that CBA did not acquiesce to the phased absorption of Ogden's reimbursement obligation. Consequently, Ogden concludes that CBA should not be afforded any equitable remedies under the unclean hands doctrine.

In opposition, CBA responds that mere silence cannot constitute an acceptance, and that an ERISA plan can not be modified except in writing. CBA further contends that a fiduciary's alleged failure to reject a settlement proposal does not restrict its authority as fiduciary to enforce the terms of the benefit plan.

The Court considers Ogden's counterclaim for relief on this issue to be based on a theory of promissory, or equitable estoppel.[43] An equitable estoppel claim under the federal common law may only be made if the provisions of an ERISA-governed plan are so vague that reasonable persons could interpret them differently and a representation asserting the correct interpretation is made to the employee.[44] Further, oral modifications to an ERISA plan are statutorily prohibited.[45] Moreover, the Fifth Circuit has rejected claims that a participant can rely on oral representations that would modify the

---

41. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

42. Fed.R.Civ.P. 56(c).

43. *Whittle*, 989 F.Supp. at 1430.

44. *Id.* at 1430 (citing *Alday v. Container Corp. of Am.*, 906 F.2d 660, 665 (11thCir.1990)).

45. 29 U.S.C. § 1102(a)(1).

terms of a written plan document.[46] Finally, under Louisiana law, an offer is deemed accepted by silence "when, because of special circumstances, the offeree's silence leads the offeror reasonably to believe that a contract has been formed." [47]

Applying the above legal principles, the Court finds that Ogden's equitable estoppel defense is wholly unsubstantiated by the record. The terms of the RA and the LTD Plan provisions are not so vague that reasonable persons could interpret them differently. The language of the LTD Plan allows CBA to recoup future benefits payable to the participant in the event the participant fails to repay benefits advanced by CBA.[48] The language of the RA shows that Ogden agreed to repay CBA the amounts advanced to her in accordance with the offset provisions of the LTD Plan. In addition to the LTD Plan and the RA themselves, the evidence is undisputed that, well-prior to Ogden's alleged reliance on CBA's silence, CBA made several other representations to Ogden in the form of letters, asserting the correct interpretation of the Plan provisions regarding overpayments. The record reveals that CBA had been corresponding with the Ogdens since February 2, 1998, attempting to collect overpayments. The record further shows that when Ogden failed to make any repayment by December 1998, CBA suspended Ogden's benefits and began recouping overpaid benefits by exercising its right to setoff under the LTD Plan. Despite these setoffs, CBA made a final demand for repayment by letter dated February 23, 1999, advising the Ogdens that it would file a collection action. In sum, Mr. Ogden was not reasonable in his reliance on CBA's silence as acceptance as no special circumstances appear in the record that would lead him to reasonably believe that a new LTD Plan repayment provision was formed. Thus Ogden's defense of equitable estoppel is not supported by the record and cannot overcome her obligation, pursuant to the RA, to repay CBA.

▪ The court now turns to the merits of CBA's unjust enrichment claim. In its summary judgment motion, CBA contends that Ogden, under the provisions of the RA, is obligated to repay an amount representing the overpayment that Ogden received as a result of CBA's payment of Ogden's full disability benefits, or $22,784.24 less setoffs. CBA contends that it is entitled to restitution in this principal amount to prevent unjust enrichment, opining that Ogden has been unjustly enriched by her refusal to reimburse CBA for the overpayment of disability benefits.

▪ The Fifth Circuit has not yet addressed the question of what factors a court should consider in deciding a claim for restitution under the theory of unjust enrichment. The Fourth Circuit, however, has set forth the elements which a plan administrator must show in order to recover under this theory. They are: (1) that the plan administrator had a reasonable expectation of payment; (2) that the participant should reasonably have expected to pay; and (3) that society's reasonable expectations of person and property would be defeated by nonpayment.[49]

---

**46.** *Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290, 1296 (5th Cir.1989)(impermissible to orally modify employee benefit plan under ERISA). *See* also *Degan v. Ford Motor Co.,* 869 F.2d 889, 892 (5th Cir.1989)(ERISA precludes claims of promissory estoppel because employee is not entitled to rely on employer's oral representations).

**47.** La.Civ.Code Art.1942.

**48.** LTD Plan § 7.10(c).

**49.** *Waller,* 906 F.2d 985, 993–94 (4th Cir.1990)(citing C. Kaufman, Corbin on Contracts § 19A, at 50 (Supp.1989)).

Applying the Waller factors to the facts of this case, the Court finds that there can be no question but that this overpayment is of the sort that equity demands be returned. The summary judgment evidence conclusively establishes CBA's right recover overpayments to Ogden under the theory of unjust enrichment. The record reveals that CBA provides participants an opportunity to receive from the LTD Plan the full two-thirds of their regular monthly earnings without the offset of projected social security benefits, provided the participants agree to reimburse the LTD Plan the amount by which the LTD Plan overpaid once the social security benefits are finally awarded.

The record shows that Ogden elected to receive the full amount of monthly benefits during the pendency of her social security claim and promised to reimburse CBA for the full amount of any overpayment within 30 days of receipt by executing an RA. Under the provisions of the RA, Ogden specifically agreed to repay CBA in accordance with the terms of the offset provisions of the LTD Plan. Moreover, prior to that, in the Long Term Disability Benefits claim form which she completed on April 11, 1995, Ogden agreed to refund any monies due the LTD Plan as a result of any payment of benefits from the SSA.[50] The evidence is undisputed that Ogden ultimately received social security benefits amounting to an overpayment that were not repaid to CBA within 30 days of her receipt and that CBA made a good faith effort through several demands to have Ogden repay the amounts prior to the institution of a lawsuit.

Since Ogden received Social Security benefits amounting to an overpayment that she did not repay even though she obligated herself to do so, it is obvious that she would be unjustly enriched if she were allowed to keep the overpayments. CBA reasonably expected to be reimbursed for its advances; Ogden clearly was aware of the LTD Plan repayment provisions when she accepted the benefits and executed the RA; and the interests of society, as reflected by the goals of ERISA and efficient plan administration, would be served by allowance of an equitable remedy.[51] Reaching a contrary result might discourage some employers from operating ERISA plans altogether, or, if such plans were maintained, it might discourage the practice of advancing ERISA benefits to employees without deducting projected social security benefits, conditioned upon reimbursement once the social security benefits are received—a practice which obviously serves to lessen the financial burdens of plan participants. It thus furthers the purposes of ERISA to recognize this cause of action. Thus Ogden's motion for partial summary judgment in her favor on her counterclaim will be **DENIED** and judgment will be entered in favor of CBA, dismissing the counterclaim filed by Dale R. Ogden.

Having found that an un-reimbursed overpayment exists, the two questions remaining are (1) whether the amount of benefits payable to Ogden's children on account of Ogden's disability are to be included in the overpayment calculation, or whether only the benefits payable to Ogden should be included; and (2) whether Ogden's pension benefits are to be included in the overpayment calculation.

### (2) Ogden's Repayment Obligations

■ Ogden argues that she is not obligated to reimburse CBA for LTD benefits advanced to her on behalf of her depen-

---

**50.** CBA's Original Complaint, Exhibit 2 at 3.

**51.** *UNUM*, 227 F.Supp.2d at 615.

dents because Social Security directly paid her children once they reached the age of majority. Ogden asserts that the language of the RA is written entirely in the first-person singular, and there is not one word or phrase on the face of the agreement that even remotely refers to dependent benefits. Ogden relies on the following provision of the RA for this assertion:

> The [LTD Plan] administered by [CBA], under which I have coverage, does not provide benefits that would or might be paid if I filed a claim for Social Security benefits. CBA is entitled to estimate the amount of Social Security benefits that are or may be available to me and to reduce by that amount the benefits I would receive under the long-term disability plan. In consideration for payment by CBA of my disability benefits (to the extent otherwise payable under the terms of the LTD Plan) unreduced by estimated Social Security benefits are paid, I unconditionally promise and agree [t]o file a claim with the Social Security Administration as I am eligible...[and to] repay CBA the amounts that it advanced to me...within 30 days off my receipt of the proceeds of any benefits, awards or payments recovered from Social Security...[52]

Ogden asserts that, based on this language, she has no obligation under the RA to pay an offset attributable to her dependents' Social Security benefits.

In opposition, CBA denies that the RA or the LTD Plan condition Ogden's repayment obligations solely to the extent that she personally received funds from Social Security. CBA argues that, in accordance with the clear, plain and unambiguous terms of the LTD Plan, Ogden is liable to CBA for reimbursement of the benefit overpayment caused by the receipt of Social Security primary disability benefits for herself and her dependents.[53] In addition, CBA argues that its right to recover the overpayment is further reinforced by the terms of the RA Ogden signed. CBA argues finally, that Ogden has never contested that she is required to reimburse CBA, and has admitted that the benefit advances made pursuant to the LTD Plan and RA operate "as sort of a loan" to her.[54]

After review of the pertinent LTD Plan and RA language, the Court concludes that the offset for benefits received by Ogden's dependents is proper. The language of the LTD Plan and the RA is plain and unambiguous that Ogden is obligated to pay CBA for any Social Security disability amounts received by her daughters. The LTD Plan refers to social security benefits as such:

> Benefits on account of the United States Social Security Act as amended from time to time, including benefits paid to the Participant's spouse or children on account of the Participant's employment and earnings record...[55]

---

**52.** Ogden's Answer and Counterclaim Original Complaint, Exhibit A, Reimbursement Agreement.

**53.** *Nesom v. Brown & Root, U.S.A., Inc.*, 987 F.2d 1188, 1194–95 (5th Cir.1993)(plan can recoup overpayment of disability benefits upon beneficiary's receipt of lump sum award from worker's compensation). *See also Blue Cross & Blue Shield of Alabama v. Sanders*, 138 F.3d 1347, 1353 & nn.1–2 (11th cir.1998)(permitting claims administrator to obtain specific performance of medical plan's reimbursement provision and recover overpayment of benefits from beneficiary who received payment from responsible third party); *Warren v. Federal Express Corp.*, 776 F.Supp. 548, 549–50 (S.D.Ala.1991).

**54.** Ogden's Answer and Counterclaim, Paragraph 11.

**55.** LTD Plan § 7.09.

In addition, Ogden agreed to the following terms in the RA:

> I unconditionally promise and agree "[T]o repay CBA the amounts advanced to me in accordance with the offset provisions of the Long—Term Disability Plan and this Reimbursement Agreement within 30 days of my receipt of the proceeds of any benefits, awards, or payments recovered from Social Security whether by claim, legal action, settlement or otherwise." [56]

The Court does not interpret the language of the RA nor the LTD Plan as stating that only the Social Security benefits paid directly to Ogden were subject to offset. The language of the documents indicate to the Court that the Social Security disability benefits to be offset against LTD Plan benefits include not only those benefits payable to the Participant, but those benefits payable to the Participant's dependents as a result of "the Participant's employment and earnings record." It is also apparent to the Court that Ogden agreed to repay CBA for *any* proceeds that she received from the SSA that would have resulted in an overpayment of disability benefits.

Thus, the Court finds that Ogden's social security disability benefits are subject to offset regardless of whether they are payable to Ogden, her spouse, or her dependents. CBA is therefore entitled to recover the entire amount of the overpayment caused by Ogden's disability, including any Social Security benefits paid to her dependents.[57] Consequently, Ogden's request for partial summary judgment on this issue will be **DENIED**.

### (3) Ogden's Pension Plan Offset

Ogden finally argues, in her motion for summary judgment, that certain pension benefits are not subject to offset under the LTD Plan since she withdrew funds from her pension and rolled them into an Individual Retirement Account ("IRA"). Alternatively, Ogden contends that her counterclaim should not be barred due to the contention that her claim is a compulsory counterclaim under Rule 13(a) of the Federal Rules of Civil Procedure. Ogden further claims that she should not be required to exhaust administrative remedies with respect to this claim because exhaustion in such a case would be a meaningless exercise.

In opposition, CBA contends that Ogden's counterclaim should be barred on the grounds that Ogden failed to exhaust her administrative remedies when she did not appeal CBA's decision to suspend her disability payments following her receipt of CBA's December 8, 1998 letter discontinuing her benefits. CBA asserts further that Ogden failed to provide it with requisite documentation demonstrating a qualified IRA rollover of her funds in order to prevent those pension benefits from being used to offset her disability benefits. CBA therefore concludes that Ogden is now barred from disputing CBA's calculation with regard to her pension benefits.

Generally, a plaintiff's failure to exhaust the administrative remedies provided in an ERISA plan forecloses judicial review. In *Chailland v. Brown & Root,* the Fifth Circuit adopted the common law rule that a plaintiff generally must exhaust administrative remedies afforded by an ERISA plan before suing to obtain bene-

---

56. Social Security Reimbursement Agreement (RA), ¶ 3.

57. *Whittle,* 989 F.Supp. 1421 (M.D.Ala.1997) (plan was entitled to recover Social Security disability benefits received by plan participant and his dependents under terms of Reimbursement Agreement between participant and plan).

fits wrongfully denied.[58] Congress intended to grant authority to the courts to apply the exhaustion doctrine in suits arising under [ERISA].[59] The policies underlying the exhaustion requirement are "(1) to uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; [and] (2) to provide a sufficiently clear record of administrative action if litigation should ensue[.]"[60] "[T]hese policies require claimants to make some attempt at obtaining their benefits through the administrative route, or at the very least, to make some effort to learn of the procedures applicable to them."[61] There are exceptions to the exhaustion requirement, however, such as where resort to the administrative route would be futile or where a claimant has been denied meaningful access to the procedures.[62]

The Court finds that Ogden failed to exhaust her administrative remedies. Thus, Ogden's right to challenge the pension offset no longer exists. The record shows that the LTD Plan encompasses a claims review procedure that must be completed prior to the judicial review of a decision rendered by CBA. It is undisputed that Ogden did not initiate or engage in the claims review procedure. The Court finds that none of the relevant exceptions apply in this case. Aside from Ogden's conclusory statements, no showing has been made that resort to the administrative route would be futile or that Ogden has been denied meaningful access. Consequently, Ogden's failure to exhaust administrative remedies mandates that judgment be entered in CBA's favor. The Court will grant summary judgment in favor of CBA and dismissing Ogden's counterclaim since Ogden's right to challenge the pension offset no longer exists.

### B. CBA's Motion for Summary Judgment

Having already found that the provisions of the LTD Plan and the RA provide that Social Security disability benefits received by a participant's dependents on account of the participant's disability will be offset from the participant's LTD Plan benefit, and having found that Ogden's right to challenge the pension offset no longer exists, the court now finds that the evidence conclusively establishes CBA's right to recover overpayments to Ogden in accordance with the LTD Plan and reimbursement under a theory of unjust enrichment. The record reveals that the LTD Plan provisions are unambiguous; that Ogden signed a reimbursement agreement; that CBA paid her unreduced LTD benefits; and that Ogden received Social Security disability benefits that resulted in an overpayment. Thus, CBA is entitled to the entry of summary judgment in the principal amount of $22,784.24, less the amount of monies received in offset, to enforce the terms of the long term disability plan.

In addition to recovering the overpayment of benefits advanced to Og-

---

**58.** *Chailland v. Brown & Root, Inc.*, 45 F.3d 947, 950 (5th Cir.1995)(citing *Denton v. First National Bank*, 765 F.2d 1295, 1300–03 (5th Cir.1985)). *See* also, *Simmons v. Willcox*, 911 F.2d 1077, 1081 (5th Cir.1990).

**59.** *Denton*, 765 F.2d at 1300 (citing *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir.1980)).

**60.** *Id.* at 1300.

**61.** *Meza v. General Battery Corp.*, 908 F.2d 1262, 1279 (5th Cir.1990).

**62.** *Meza*, 908 F.2d at 1279 ("This is not to say ... that [claimant] would have no judicial remedy if [administrator's] failure to provide him with pension plan information prejudiced him in his efforts to obtain benefits to which he is otherwise entitled."); *Denton*, 765 F.2d at 1302 (recognizing and discussing the futility exception to the exhaustion requirement).

den, CBA is entitled to certain other remedies. In accordance with the RA executed by Ogden, CBA is entitled to eight percent interest on this principal amount due compounded annually from the date on which Ogden and her dependents received the Social Security disability benefits to the date on which Ogden ultimately repays CBA. Furthermore, and in accordance with the RA, Ogden is obligated to pay the costs and attorneys' fees that were incurred by CBA in order to obtain this relief.

Therefore, for the above and foregoing reasons, it is hereby ORDERED, ADJUDGED, AND DECREED that:

1. Defendant/Plaintiff–in–Counterclaim Dale R. Ogden's Motion to Dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(7) for lack of indispensable parties (Docket No. 14), is hereby **DENIED;**

2. Defendant/Plaintiff–in–Counterclaim Dale R. Ogden's Motion for Partial Summary Judgment (Docket No. 18), is hereby **DENIED;**

3. The Motion for Summary Judgment filed by Plaintiff/Defendant–in–Counterclaim Cooperative Benefit Administrators, Inc. (Docket No. 21), is hereby **DENIED** insofar as it seeks restitution under 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), but **GRANTED** on the claim of unjust enrichment under the federal common law of ERISA. Accordingly, there will be judgment in favor of the Plaintiff, Cooperative Benefit Administrators, Inc. and against the Defendant, Dale R. Ogden, in the principal sum of $22,784.74, plus interest at the rate of eight percent (8%) compounded annually on the unpaid amount from the date on which Ogden or her dependents received the Social Security disability benefits to the date on which Ogden ultimately repays CBA, plus costs and attorneys' fees incurred by CBA in obtaining the relief contained in this Order and Judgment, subject to credit for any amounts recouped by CBA prior to entry of this judgment. Costs are taxed against the Defendant, Dale R. Ogden.

4. The parties are given until June 1, 2003, to agree on the amount of interest, costs and attorneys' fees due under this Judgment and to file a statement of their agreement. In the absence of agreement, the court will schedule a hearing for the receipt of evidence on this issue.